# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

|  |  |
|---|---|
| **Intercurrency Software LLC,**<br><br>**Plaintiff,**<br><br>v.<br><br>**Morgan Stanley & Co. LLC, Morgan Stanley International PLC,  and Morgan Stanley Capital Services LLC,**<br><br>**Defendants.** | **Case No. 2:23-cv-0130**<br><br>**Jury Trial Demanded** |

<br><br>

## **BRIEF IN OPPOSITION TO RULE 12(b)(6) MOTION TO DISMISS**

## <u>TABLE OF CONTENTS</u>

I.      **Morgan Stanley Has Not Met Its Burden** ...................................................... 1

    A.      **Claim 1 of the '107 Patent is Not Representative** ...................................... 1

    B.      **There is a Genuine Issue of Material Fact** ................................................ 3

II.     **The Asserted Claims Are Patent Eligible Under 35 U.S.C. § 101** .................. 3

    A.      **Morgan Stanley's Eligibility "Analysis" is Defective** .............................. 8

        1.      *Alice* **Step One – The Claims are Not Directed to an Abstract Idea** .......... 8

        2.      *Alice* **Step Two – The Claims Include an Inventive Concept** ................... 11

    B.      **Claim Construction** ..................................................................................... 13

III.    **The Complaint is Sufficiently Pled** ................................................................ 14

IV.     **Conclusion** ......................................................................................................... 18

## <u>TABLE OF AUTHORITIES</u>

*Alice Corp. Pty. Ltd. v. CLS Bank Intern.,*
    573 U.S. 208 (2014) ................................................................*passim*

*AlexSam, Inc. v. Cigna Corp.,*
    2020 WL 7233403 (E.D. Tex. Oct. 26, 2020) ........................................ 1

*Amdocs (Israel) Ltd. v. Openet Telecom, Inc.,*
    841 F.3d 1288 (Fed. Cir. 2016) ................................................. 5, 7

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) ................................................................. 1

*Berkheimer v. HP Inc.,*
    881 F.3d 1360 (Fed. Cir. 2018) ............................................. 1, 5, 7

*Bascom Global Internet Svcs, Inc. v. AT&T Mobility LLC,*
    827 F.3d 1341 (Fed. Cir. 2016) ..................................................... 7

*In re Bilski,*
    545 F.3d 943 (Fed. Cir. 2008), aff'd, *Bilski v. Kappos*, 130 S. Ct. 3218 (U.S. 2010) ........ 9, 11

*Cellspin Soft, Inc. v. Fitbit, Inc.,*
    927 F.3d 1306 (Fed. Cir. 2019) ............................................. 2, 3, 7

*DDR Holdings, LLC v. Hotels.com, L.P.,*
    773 F.3d 1245 (Fed. Cir. 2014) .................................................*passim*

*ILife Techs., Inc. v. Nintendo of America, Inc.,*
    2021 WL 117027 (Fed. Cir. Jan. 13, 2021) .......................................... 8

*Mayo Collaborative Servs. v. Prometheus Labs., Inc.,*
    566 U.S. 66 (2012) ................................................................ 11

*PPS Data LLC v. Jack Henry  & Assoc., Inc.,*
    404 F.Supp.3d 1021 (E.D. Tex. 2019) ......................................... 4, 5, 7

*Repifi Vendor Logistics, Inc. v. Intellicentrics, Inc.,*
    2021 WL 1196271 (E.D. Tex. Mar. 20, 2021) ......................................... 8

*SRI Int'l, Inc. v. Cisco Sys., Inc.,*
    930 F.3d 1295 (Fed. Cir. 2019) ..................................................... 5

*TecSec, Inc. v. Adobe, Inc.,*
    978 F.3d 1278 (Fed. Cir. 2020) ..................................................... 8

Plaintiff Intercurrency LLC ("Plaintiff" or "Intercurrency") respectfully submits this Brief in Opposition to Defendants Morgan Stanley Brokerage Services LLC, National Financial Services LLC, Morgan Stanley FOREX, Inc., and FMR LLC's (collectively, "Defendants" or "Morgan Stanley") Rule 12(b)(6) Motion to Dismiss [Dkt. No. 9] ("Morgan Stanley's Motion").  As will be shown in greater detail herein below, Morgan Stanley's Motion lacks merit and should be summarily denied.

## I.     Morgan Stanley Has Not Met Its Burden

Morgan Stanley's Motion should be denied.  Plaintiff has plead enough facts "to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 547 (2007)).  There is at least a "reasonable inference that the Morgan Stanley is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

### A.  Claim 1 of the '107 Patent Is Not Representative

Each claim is entitled to an independent presumption of validity. "Each claim of a patent (whether in independent, dependent, or multiple dependent form) shall be presumed valid independently of the validity of other claims; dependent or multiple dependent claims shall be presumed valid even though dependent upon an invalid claim. The burden of establishing invalidity of a patent or any claim thereof shall rest on the party asserting such invalidity." 35 U.S.C. § 282. Accordingly, a party that asserts invalidity bears the burden of establishing that each challenged claim is patent-ineligible. This Court has stated that "when the movant relies on a representative claim in its § 101 analysis, it bears the burden of showing that the other asserted claims are 'substantially similar and linked to the same abstract idea.'" *Perdiemco, LLC v. Industrack LLC*, No. 2:15-cv-727-JRG-RSP, 2016 WL 5719697, at *7 (E.D. Tex. Sep. 21, 2016) (*quoting Content Extraction & Transmission LLC v. Wells Fargo Bank, N.A.*, 776 F.3d 1343, 1348 (Fed. Cir. 2014)). A challenger cannot meet that burden by selecting one claim and try to

shift the burden onto the patent holder to demonstrate that other claims are of a different character. Any such rule would violate the clear statutory prescription of § 282.

Defendants declare, without complete analysis, that claim 1 of the '107 patent is representative of all asserted claims in the '863 and '930 patents. Morgan Stanley's Motion at 10-14. Although much effort is spent, mere conclusory statements, however belabored, are not enough to meet Defendants' burden to establish that claim 1 is, in fact, representative of all asserted claims for purposes of the abstract idea analysis. *See, e.g., Versata Software, Inc. v. NetBrain Technologies, Inc.*, No. 13-cv-676-LPS-CJB, 2015 WL 5768938, at *4 (D. Del. Sep. 30, 2015) ("[W]ith Defendants having given negligible attention to the remainder of the claims, the Court does not find it wise or appropriate to make a final determination as to the subject matter eligibility of such claims at this time"); *Perdiemco*, 2016 WL 5719697, at *7.

Moreover, Defendants are factually incorrect in their assertion that claim 1 is representative. While claim 1 recites certain important features of the inventive concept, other asserted claims recite distinct claim limitations that further define variations of the inventiveness of the claimed subject matter. For example, independent claim 12 of the '930 patent recites "wherein the trading server causes a display of a market value of the asset in second currency in reference to a setting of the second currency by the trader" and "wherein costs and fees in the settlement are not identical to the displayed costs and fees before the transaction of the asset took place," which are not present at all in the '107 Patent. '930 patent, cl. 12. In addition, independent claims 1 and of the '863 patent recites the steps of "coupling a trading server to one or more currency exchange servers and one or more market exchange servers" and "receiving a price of the asset being traded over the market exchange server, the price shown in the trading server being in the preferred currency in conjunction with the calculated prevailing currency exchange rate." '863 patent, cls. 1, 6.

Having presented no argument or analysis with respect to these elements and the other claims, Defendants have failed to meet their burden. Section 282 precludes the shortcut Defendants would like to take here. Plaintiff is entitled to a presumption of validity on every claim.

### B.  There Is a Genuine Issue of Material Fact

As shown herein, the Asserted Claims are drawn to patent-eligible subject matter.  Even if Morgan Stanley could prove the Asserted Claims are directed to an abstract idea (which it cannot), Morgan Stanley has nevertheless failed to establish a lack of factual dispute with respect to the allegations of the Complaint relating to the existence of an inventive concept.  For example, Morgan Stanley fails to meet its burden to deny the Complaint's factual basis as to "whether a claim element or combination of elements is well-understood, routine and conventional to a skilled artisan in the relevant field," which is a question of fact that must be "proven by clear and convincing evidence."  *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1368 (Fed. Cir. 2018).

## II.    The Asserted Claims are Patent Eligible Under 35 U.S.C. § 101

Morgan Stanley's Motion raises the now customary boilerplate argument that all Asserted Claims are invalid because they allegedly fail to recite patent-eligible subject matter.  Morgan Stanley's Motion is premised on a gross oversimplification of the Asserted Claims and the underlying notion that virtually no invention remotely relating to asset trading can be patent eligible.  Accordingly, Morgan Stanley's Motion fails on the merits and should be denied.

First and foremost is the obvious fact that this issue is presented to the Court at the pleading stage. As such, the Court is left with zero developed record from which it could possibly assess what was, and what was not, well-understood, routine, and conventional in the art ***as of April 2007***, not to mention a lack of familiarity with the disclosures and an absence of claim construction.  For all of the reasons this Court has previously outlined, *see, e.g., AlexSam, Inc. v. Cigna Corp.*, 2020 WL 7233403 at *4-5 (E.D. Tex.

BRIEF IN OPPOSITION TO MOTION TO DISMISS                                                                3

Oct. 26, 2020) (denying motion to dismiss), the Asserted Claims here cannot and should not be summarily invalidated simply because Morgan Stanley refuses to accept the non-abstract nature of, and numerous inventive concepts captured in, the Asserted Claims. Morgan Stanley's lack of an actual representative claim further compounds the burden Morgan Stanley fails to meet.

As the Court is well aware, the Asserted Claims of the patents are presumptively novel and non-obvious, presumptively drawn to patent-eligible subject matter, and presumptively properly examined and allowed by the Examiner(s) at the United States Patent Office.  *See, e.g., Cellspin Soft, Inc. v. Fitbit, Inc., et al.,* 927 F.3d 1306, 1319 (Fed. Cir. 2019). Indeed, Morgan Stanley's Motion fails to address that the Patent Examiner of the Asserted Claims expressly addressed patent-eligibility before stating reasons for allowance.  *See* Dkt 1 at ¶¶ 27-31.

Further, at the pleading stage, the Court is required by law not only to accept all factual allegations in the operative Complaint as true, but also to draw all reasonable inferences in the patentee's favor.  *Slyce,* 2020 WL 278481 at *4.  Here, just as in the *Cellspin* case, the Complaint contains a multitude of specific and plausible statements of fact establishing the non-abstract nature of the Asserted Claims.

More specifically, the Complaint alleges that, as of the Date of Invention in April 2007:

> 16.     As of the priority date, the inventions as claimed were novel, non-obvious, unconventional, and non-routine.   Indeed, the Patents-in-Suit overcame a number of specific technological problems in the industry and provided specific technological solutions.

> 17.     By way of example, as of the date of invention, the prior art of financial service providers which allowed foreign investors to trade U.S. securities required the trades to be done in U.S. currency, which required the use of foreign currency exchange brokers before and after trading to realize profits. This did not allow foreign investors to have "certain knowledge of what profit or loss he was going to get because the currency exchange rate must be obtained for a bulk amount at another time, which may fluctuate significantly enough to affect the ultimate profit or loss." *See* '107 Patent, Col. 1, ll. 38-60.

18.     The prior art did not perform the "the currency conversion [sic] at a transactional level … so that a trader or investor knows exactly what profit or loss may occur with a transaction." The prior art did not "show prices as well as conduct all transactions in a currency preferred by an investor, regardless of whatever currency being used in the primary market for the security/asset." *Id*., Col.1, ll. 61-7 and Col. 2, ll. 1-3.

19.     Therefore, "the invention relates to methods, processes and systems for conducting security transactions in a preferred currency, regardless of what original or market currency the securities are being traded in and where the transaction may take place." *Id*., Col. 2, ll. 15-9.

20.     Further, as an embodiment of the inventions, the inventions provide "a three-tier architecture [sic] which includes a brokerage, a market exchange where securities/assets are traded, and a currency exchange where amounts in one currency can be converted to corresponding amounts in another currency at prevailing rates," which "presents all prices, market data, P&L estimates, and transaction results or settlements in a preferred currency, in conjunction with the market exchange and the currency exchange. *Id.,* Col. 2, ll. 24-33.

21.     Thus, "a trader always knows exactly what he/she may end up with a transaction of an asset. Furthermore, according to another aspect of the present invention, when the transaction of the asset is performed, the consolidated trading platform can also perform a currency conversion automatically based on specified conditions." *Id*., Col. 2, ll. 33-8.

22.     The inventions of the Patents-in-Suit also contemplate that "orders with conditions (e.g., a limit order, or a stop order) are only executed when the conditions are met with reference to the market price from the market exchange together with the currency exchange rate from the currency exchange." *Id.*, Col. 2, ll. 45-9.

23.     Moreover, any arguments relating to eligibility as may be made by Defendant here are necessarily merely cumulative with those already considered, and rejected, by the Patent Examiners in allowing the Patents-in-Suit.  *See, e.g., Technology Licensing Corp. v. Videotek, Inc*., 545 F.3d 1316, 1337 (Fed. Cir. 2008); *Stone Basket Innov. v. Cook Medical*, 892 F.3d 1175, 1179 (Fed. Cir. 2018).

24.     The claims of the Patents-in-Suit are not drawn to laws of nature, natural phenomena, or abstract ideas.  Although the systems and methods claimed in the Asserted Patents are ubiquitous now (and, as a result, are widely infringed), the specific combinations of elements, as recited in the claims, were not conventional or routine at the time of the invention.

25.     Further, the claims of the Patents-in-Suit contain inventive concepts. Even if a court ruled the underlying aspects to be abstract, the inventive concepts disclosed in sufficient detail would transform the claims into patent-eligible subject matter.

*See* Dkt. No. 1 at ¶¶ 16-25.

The facts as plead are plainly relevant to the presence of inventive concepts captured in the Asserted Claims. These specific factual allegations in the Complaint define the state of the art as of the Date of Invention and provide a basis in fact to conclude that the Asserted Claims are indeed patent-eligible.

These specific factual allegations, as well as the common written specification of the Asserted Patents, define benefits and technological improvements captured in the Asserted Claims over the prevailing art as of April 2007. *See e.g.* Dkt. No. 1 at ¶¶ 16-25, Ex. A. Thus, the Asserted Claims are patent-eligible. *See PPS Data LLC v. Jack Henry & Assoc., Inc.,* 404 F.Supp.3d 1021, 1039 (E.D. Tex. 2019) ("when the claimed technology overrides the routine and conventional sequence of events in order to provide a technological benefit, it is eligible at *Alice* Step Two") (citing *SRI Int'l, Inc. v. Cisco Sys., Inc.,* 930 F.3d 1295, 1304 (Fed. Cir. 2019). Stated differently, claims such as these include an inventive concept when they provide a technological solution to a technological problem. *Amdocs (Israel) Ltd. v. Openet Telecom, Inc.,* 841 F.3d 1288, 1300 (Fed. Cir. 2016).

The inventions of the Asserted Claims solve the technical problem facing the industry in 2007 associated with the difficulty traders had with knowledge of costs and fees in a chosen currency. *See e.g.,* Dkt. No. 1 at ¶¶ 16-25, Ex. A. Moreover, the fact that the Complaint recites the disclosures and teachings *as taken directly from the written specification* of the Asserted Claims is fatal to Morgan Stanley's Motion.

In *Berkheimer*, the Court of Appeals fully credited the specification's disclosure of the state of the art, as well as its recitation of improvements over the art, as sufficient to create fact issues precluding summary judgment, as long as such were captured in the claims. *Berkheimer v. HP Inc.,* 881 F.3d 1360,

1369 (Fed. Cir. 2018); *see also PPS Data,* 404 F.Supp.3d at 1040-41 ("The Federal Circuit routinely relies on factual assertions in patent specifications not only as *some* evidence, but *conclusive* evidence of inventiveness") (emphasis added).  Of course, the benefits of the inventions, as noted in the Complaint, are conferred due to the inventive concepts as claimed, as opposed to the mere practice of the "abstract idea" suggested by Morgan Stanley of merely "economic activity." Morgan Stanley's Motion at 14.

The Complaint further alleges the inventions as claimed overcame these deficiencies in the art by:

> conducting security transactions in a preferred currency, regardless of what original or market currency the securities are being traded in and where the transaction may take place.

*See* Dkt. No. 1 at ¶ 19.

> The inventions provide "a three-tier architecture [sic] which includes a brokerage, a market exchange where securities/assets are traded, and a currency exchange where amounts in one currency can be converted to corresponding amounts in another currency at prevailing rates," which "presents all prices, market data, P&L estimates, and transaction results or settlements in a preferred currency, in conjunction with the market exchange and the currency exchange.

*See* Dkt. No. 1 at ¶ 20.

Once again, these specific factual allegations, which must be taken as true, define benefits and technological improvements captured in the Asserted Claims over the prevailing art as of April 2007.  As such, the Asserted Claims are patent-eligible.  As noted, the inventions define unconventional approaches over the existing art as of April 2007, in the form of a system that allows for conducting security transactions in a preferred currency regardless of what original or market currency the securities are being traded in and where the transaction may take place.  Formerly, the prior art did not show prices as well as conduct all transactions in a currency preferred by an investor, regardless of whatever currency being used in the primary market for the security/asset. *See* Dkt. No. 1 at ¶ 18.

Again, and as noted above, these factual assertions are drawn directly from the intrinsic record of the written specification, and explain how the Asserted Claims capture unconventional technological improvements over the art. As such, they can be considered as conclusive evidence of the facts as stated. *Berkheimer,* 881 F.3d at 1369; *PPS Data,* 404 F.Supp.3d at 1040-41. Such inventions satisfy the threshold requirement of 35 U.S.C. § 101 and are plainly patent eligible. *See Bascom Global Internet Svcs, Inc. v. AT&T Mobility LLC,* 827 F.3d 1341, 1350 (Fed. Cir. 2016); *DDR Holdings, LLC v. Hotels.com, L.P.,* 773 F.3d 1245, 1258-59 (Fed. Cir. 2014); *Amdocs (Israel) Ltd. v. Openet Telecom, Inc.,* 841 F.3d 1288, 1301-02 (Fed. Cir. 2016). At a minimum, the facts as presented in the Complaint satisfy the *Cellspin* standard, and Morgan Stanley's Motion should be denied.

### A.     Morgan Stanley's Eligibility "Analysis" is Defective

As noted above, the factual allegations of the Complaint in this case are more than sufficient to state a plausible claim for relief, and Morgan Stanley's Motion should be denied. However, to the extent the Court is inclined to evaluate the eligibility of the Asserted Claims on this record, Plaintiff would show that, not only is Morgan Stanley's "analysis" severely defective, but the Asserted Claims should be affirmatively deemed patent-eligible under 35 U.S.C. § 101.

### 1.     *Alice* Step One – The Claims are Not Directed to an Abstract Idea

First, with respect to *Alice* Step One, the Asserted Claims are not directed to an abstract idea, and the misguided notion that the Asserted Claims recite mere "conventional components" is both wrong and entirely irrelevant. *See ILife Techs., Inc. v. Nintendo of America, Inc.,* 2021 WL 117027 at *2 (Fed. Cir. Jan. 13, 2021) ("the district court erred to the extent that it incorporated conventionality of claim elements at step one"; and "[a] claim is not directed to an abstract idea simply because it uses conventional technology").

Morgan Stanley argues that the Asserted Claims are merely "economic activity." Morgan Stanley's Motion at 14. Morgan Stanley further argues that the Asserrted Claims are limited to "conventional components are well-known in the industry for use in financial transactions"  Morgan Stanley's Motion at 19. This assertion is based on a gross oversimplification of the Asserted Claims, and is simply false.

At the Step One phase, the proper approach is to determine what the Asserted Claims are "directed to" by evaluating what the patent itself asserts as the "focus" of the claimed advance over the prior art. *TecSec, Inc. v. Adobe, Inc.,* 978 F.3d 1278, 1292-93 (Fed. Cir. 2020).  Such an analysis must remain true to the language of the claims themselves in light of the specification and must be careful to avoid overgeneralizing the claims.  *Id.* (citing cases).  The focus of the claimed advance over the prior art in this case is a system that allows for a trading server coupled to a market and currency exchange server, wherein the costs and fees associated with the trading server are dynamically changed in accordance with the prevailing exchange rate updated constantly.  This is not an abstract idea.  To the contrary, this is a solution to the technical problem facing the industry in 2007 associated with the difficulty of a trader having some knowledge of the updated costs and fees associated with a trade, which involves different currencies, before the trade, which prior art systems could not technically perform and provide.

Further, an idea is abstract if it has "no particular concrete or tangible form." *Ultramercial, Inc. v. Hulu*, 772 F.3d 709, 715; see also *In re TLI Commc'ns.*, 2015 WL 627858, at *8 (An idea is abstract if it "describes a scheme or concept not tied to a particular concrete application"). Although the "precise contours of the 'abstract ideas' category" were not delimited in *Alice*, the Supreme Court and the Federal Circuit have provided some important principles. Namely, the Supreme Court has instructed that mathematical algorithms and fundamental economic and conventional business practices are abstract ideas. See *DDR Holdings, LLC v. Hotels.com LP*, 773 F.3d 1245, 1256 (Fed. Cir. 2014) (citing *Benson*,

409 U.S. at 64, 93 S.Ct. 253 (finding mathematical algorithms patent ineligible); *Bilski*, 561 U.S. at 611 (finding the "fundamental economic practice" of hedging to be patent ineligible); *Alice*, 134 S.Ct. at 2356 (same for intermediated settlement)).

Morgan Stanley attempts to rely on *Trading Techs. I and II*, but "[t]he question of whether a patent is for a 'technological invention' is fact-specific and must be considered on a case-by-case basis." *See SIPCO, LLC v. Emerson Elec. Co.*, 939 F.3d 1301, 1312 (Fed. Cir. 2019).

Here, the Asserted Claims do not fall within the contours of the *Trading Techs* cases. The Asserted Claims have physical, tangible and specialized components that are directed to more than the performance of an abstract idea. *See id*. The Asserted Claims utilize an unconventional specialty trading server, wherein the trading server is coupled to a market and currency exchange server, wherein the costs and fees associated with the trading server are dynamically changed in accordance with the prevailing exchange rate updated constantly, which ultimately relies on the speed of processing that can only be afforded by sophisticated computing systems, over human methods, in order to provide the technical improvement over existing trading systems that were previously used in brokerage firms (*e.g.,* Charles Schwab). Thus, the present claims recite a technical solution to a problem arising in the realm of computing networks in finance, which is significantly more than an abstract idea, consistent with the decision in *DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245 (Fed Cir. 2014). *See* Ex. B, '863 Patent, Cl. 1.

Similar to U.S. Patents No. 6,772,132 and No. 6,766,304 in *Trading Techs.,* the Asserted Claims cover a computerized method and system used for trading securities priced in a currency other than the currency used by a trader. When buying and selling a stock, speed and accuracy are both critically important and are captured in the asserted claims, as the inventor created a Graphical-User-Interface design that helps a trader buy and sell a stock with certainty even the currency exchange rates fluctuate

rapidly, which humans and previous trading systems could not technically perform at all. (*Cf. Trading Techs. I* at 1089; *see also Trading Techs. II* at 1383 (inventions merely helped a trader gain a market advantage).

Thus, the Asserted Claims have a clear, concrete and tangible form in that they are directed to providing utilize an unconventional specialty trading server coupled to a market and currency exchange server, wherein the costs and fees associated with the trading server are dynamically changed in accordance with the prevailing exchange rate updated constantly, with tangible and concrete hardware that has been adapted for that purpose.

### 2.   *Alice* Step Two – The Asserted Claims Include an Inventive Concept

As discussed above, the Asserted Claims are not directed to an abstract idea. Further, even assuming, *arguendo*, that the Asserted Claims are directed to an abstract idea, the Asserted Claims nonetheless include an inventive concept.

The second step of the *Alice* analysis requires determining whether a claim that is found to be directed to an abstract idea includes additional elements that transform the nature of the claim into something "significantly more" than the ineligible subject matter. See *Alice*, 134 S.Ct. at 2355. This requires that one "consider the elements of each claim both individually and 'as an ordered combination' to determine whether the additional elements 'transform the nature of the claim' into a patent-eligible application." *Id*. (citing *Mayo Collaborative Services v. Prometheus Laboratories, Inc.*, 132 S.CT. 1289, 1297).

Although the machine-or-transformation test is not the sole test governing a Section 101 analyses, it can provide a "useful clue" in the second step of the *Alice* framework. *Bancorp Servs.*, 687 F.3d at 1278 (citing *Bilski*, 561 U.S. at 604) ("[W]hile not the sole test for deciding whether an invention is a

patent-eligible 'process,'" the machine-or-transformation test "remains a 'useful and important clue, an investigative tool, for determining whether some claimed inventions are processes under § 101").

The Supreme Court has acknowledged that the machine-or-transformation test "may well provide a sufficient basis for evaluating processes similar to those in the Industrial Age—for example, inventions grounded in a physical or other tangible form." *Bilski*, 561 U.S. at 605. Here, application of the machine-or-transformation test confirms the claims are patent-eligible.

A claimed process can be patent-eligible under § 101 if: "(1) it is tied to a particular machine or apparatus, or (2) it transforms a particular article into a different state or thing." *In re Bilski*, 545 F.3d 943, 954 (Fed. Cir. 2008) (*en banc), aff'd, Bilski*, 561 U.S. 593. The Asserted Claims are tied to a particular machine or apparatus. In particular, the Asserted Claims are tied to a utilize an unconventional specialty trading server that is linked to both currency exchange server and market exchange server. *See* Ex. B, '863 Patent, Cl. 1. Within the trading server, "costs and fees are dynamically changed in accordance with the prevailing exchange rate updated constantly." *See* Ex. C, '930 Patent, Cl. 12.  The Asserted Claims are also tied to a memory device and a transmitter. *Id*. The use of a specialized server and a transmitter are essential to the operation of the claimed systems. *See SiRF Tech., Inc. v. Int'l Trade Comm'n*, 601 F.3d 1319, 1333 (Fed. Cir. 2010).

Morgan Stanley argues that the Asserted Claims recite generic trading computer components. Morgan Stanley's Motion at 19. As explained above, the claimed "trading server" is not an "off-the-shelf generic computer component," but rather a specialized trading server coupled to a market and currency exchange server, wherein the costs and fees associated with the trading server are dynamically changed in accordance with the prevailing exchange rate updated constantly. Further, there is nothing in *Alice* or *DDR* or any of the other seminal cases on patent-eligibility that instructs one to disregard a claim element simply because that claim element can be found in the prior art, again in the 2007 era.

BRIEF IN OPPOSITION TO MOTION TO DISMISS                                              12

Indeed, almost all inventions consist of new combinations of old elements. *See DDR*, 773 F.3d at 1257 n.5 ("[o]n a fundamental level, the creation of new compositions and products based on combining elements from different sources has long been a basis for patentable inventions"). Thus, a claim element is not conventional for purposes of a Section 101 analysis just because it appears in the prior art.

Rather, when cases such as *Alice* and *Bancorp* discussed the "routine" or "insignificant" use of computers, they were addressing a computer that merely is programmed to practice a prior art non-computerized method (e.g., "generating tasks to be performed in an insurance organization" as in *Accenture*). *Alice* recognized that modern computers can be programmed to facilitate many precomputer tasks, and this is what *Alice* brings into focus for possible exclusion from patentability. *Alice* does not say that one should somehow ignore a claim element that is limited to a specialized computer because that computer is in the prior art.

The claimed "trading server" is certainly a specialized computer. The trading server includes the transmission of "costs and fees [that] are dynamically changed in accordance with the prevailing exchange rate updated constantly." *See* Ex. C, '930 Patent, Cl. 12. This is hardly the "generic computers" that *Alice* says are insufficient to confer patent-eligibility. In other words, this is not a case where the claims specify a well-known prior art method, coupled with the requirement that the method be executed on "a computer," where the computer is any modern computer.

To the contrary, the Asserted Claims recite a combination of elements, including a specialized processing device, that together define an architecture that address problems existing at the time of the claimed invention in 2007.

## B.    Claim Construction

In the Parties' Joint Letter Regarding Necessity of Prior Claim Construction to Decide Patent Eligibility under 35 U.S.C. § 101, Plaintiff asserted that the following terms require construction prior to

the Court ruling on Morgan Stanley's Motion: "trading server;" "calculate[d] prevailing exchange rate;" "updated constantly;" and "dynamically changed." [Dkt. No. 15] ("Joint Letter").

The occurrence of a "dynamically changed" or "calculate prevailing exchange rate" or "updated constantly" term triggers certain actions by the claimed "trading server." A proper construction of these phrases is required in order to properly evaluate the merits of Morgan Stanley's "abstract concept" arguments. Further, Morgan Stanley maintains that the Asserted Claims are merely generic trading components. Morgan Stanley's Motion at 19. A proper analysis of this assertion necessarily requires the proper construction of at least the terms "trading server;" "calculate[d] prevailing exchange rate;" "updated constantly;" and "dynamically changed."

Further, because Morgan Stanley's motion is presented to the Court at the pleading stage, the Court is left with zero developed record from which it could possibly assess what was, and what was not, well-understood, routine, and conventional in the art as of April 2007, not to mention a lack of familiarity with the disclosures. For example, the Complaint states that the Asserted Claims were "novel, non-obvious, unconventional, and non-routine" and "overcame a number of specific technological problems in the industry and provided specific technological solutions." (Dkt. 1 at ¶ 16).

Accordingly, Morgan Stanley's motion is premature and should not be taken up until after claim construction has occurred in this case and the factual record as to the state of the prior art developed.

## III.   The Complaint Is Sufficiently Pled

The question on a Rule 12(b)(6) motion to dismiss is not whether the plaintiff will prevail on its claims, "but whether [the] complaint was sufficient to cross the federal court's threshold." *Script Sec. Sols. L.L.C. v. Amazon.com, Inc.*, 170 F. Supp. 3d 928, 935 (E.D. Tex. 2016) (*citing Skinner v. Switzer*, 562 U.S. 521, 530 (2011)). The Court must "accept all well-pleaded facts [in the complaint] as true and

view the facts in the light most favorable to the plaintiff." *O'Daniel v. Indus. Serv. Sols.*, 922 F.3d 299, 304 (5th Cir. 2019) (citation omitted).

After viewing the facts most favorably to the plaintiff, "the court must then decide whether those facts state a claim for relief that is plausible on its face." *Script*, 170 F. Supp. 3d at 935 (citation omitted). The plausibility standard "simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of [the claim]." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007); *accord id*. at 559, (explaining that claims should only be dismissed at the pleading stage when there is "no 'reasonably founded hope that the [discovery] process will reveal relevant evidence'" (*quoting Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 347 (2005))); *In re Bill of Lading Transmission & Processing Sys. Pat. Litig.*, 681 F.3d 1323, 1341 (Fed. Cir. 2012) ("As the Supreme Court has explained, the plausibility requirement is not akin to a 'probability requirement at the pleading stage; it simply calls for enough fact[s] to raise a reasonable expectation that discovery will reveal' that the defendant is liable for the misconduct alleged." (*quoting Twombly*, 550 U.S. at 556)). Courts "are not authorized or required to determine whether the plaintiff's plausible inference . . . is equally or more plausible than other competing inferences." *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 267 (5th Cir. 2009) (*citing Twombly*, 550 U.S. at 556). "[W]here the relevant information is beyond the access of the plaintiff, courts should generally permit discovery to proceed unless the complaint recites no more than sheer speculation about the plaintiff's entitlement to relief." *Motiva Pats., LLC v. Sony Corp.*, No. 9:18-CV-00180-JRG-KFG, 2019 WL 4737051, at *4 (E.D. Tex. Sept. 27, 2019) (*citing Wooten v. McDonald Transit Assocs., Inc.*, 788 F.3d 490, 498 (5th Cir. 2015)); *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)). At the 12(b)(6) stage, the court may decline to determine at this juncture whether asserted method claims require multiple steps or which actors must perform those steps. *BillJCo, LLC v. Cisco Sys., Inc.*, No. 2:21-cv-00181-JRG, 2021 WL 6618529, at *4

(E.D. Tex. Nov. 30, 2021) (*citing Actus, LLC v. Bank of Am. Corp.*, No. 2-09-cv-102-TJW, 2010 WL 547183, at *2 (E.D. Tex. Feb. 10, 2010).

A motion to dismiss under Rule 12(b)(6) raises purely procedural questions that are governed by the law of the regional circuit. *In re Bill of Lading*, 681 F.3d at 1331 (*citing McZeal v. Sprint Nextel Corp.*, 501 F.3d 1354, 1355-56 (Fed. Cir. 2007)). In the Fifth Circuit, motions to dismiss "are viewed with disfavor and are rarely granted." *Lormand*, 565 F.3d at 232 (citation omitted); *see also Twombly*, 550 U.S. at 556 ("[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." (internal quotation marks and citation omitted).

Morgan Stanley's primary argument with respect to the direct infringement claims is that Plaintiff's Complaint makes allegations "without any explanation for why these accused instrumentalities allegedly infringe any asserted claim of the Asserted Patents." Morgan Stanley's Motion at 24. This is simply not true. As to each of the Asserted Patents, Plaintiff alleges facts publicly available at the outset of the case which show how the accused Morgan Stanley products plausibly meet each element of one or more claims of the Asserted Patents. For example, the Complaint alleges that Morgan Stanley infringes at least claim 1 of the '107 Patent.

Plaintiff has pled that "Morgan Stanley makes, sells, advertises, offers for sale, uses, or otherwise provides an apparatus and method for a consolidated trading platform covered by the Patents-in-Suit, including its Morgan Stanley Wealth Management and E*Trade Cryptocurrency exchange platforms and systems, as represented below, including all augmentations to these platforms or descriptions of platforms." Dkt. No. 1 ¶ 31.

**Overview**

Morgan Stanley Wealth Management ("Wealth Management")  is a global financial services and wealth management firm and may utilize the services of various institutional affiliates (collectively, "MS Affiliates" and collectively, MS Affiliates with Wealth Management, "Morgan Stanley") in order to execute and fulfill clients' FX Transaction Requests. Morgan Stanley is generally engaged in a broad spectrum of FX activities, (including with respect to   equity and fixed income securities that are denominated in a foreign currency) for a variety of purposes. An FX order on behalf of any of your Wealth Management accounts will generally be executed by Wealth Management as principal in a back-to-back trade with one or more of its various MS Affiliates (including, but not limited to Morgan Stanley Capital Services and Morgan Stanley International PLC).

*See* https://www.morganstanley.com/disclosures/foreign-exchange-wealth-management-clients.



*See* https://us.etrade.com/what-we-offer/investment-choices/cryptocurrency#:~:text=Available%20to%20trade%20on%20all%20E*TRADE%20platforms%20and%20mobile%20apps.

Plaintiff also alleges:

> Morgan Stanley Wealth Management ("Wealth Management") is a global
> financial services and wealth management firm and may utilize the services
> of various institutional affiliates (collectively, "MS Affiliates" and
> collectively, MS Affiliates with Wealth Management, "Morgan Stanley")
> in order to execute and fulfill clients' FX Transaction Requests. Morgan
> Stanley is generally engaged in a broad spectrum of FX activities,
> (including with respect to   equity and fixed income securities that are
> denominated in a foreign currency) for a variety of purposes. An FX order
> on behalf of any of your Wealth Management accounts will generally be
> executed by Wealth Management as principal in a back-to-back trade with
> one or more of its various MS Affiliates (including, but not limited to
> Morgan Stanley Capital Services and Morgan Stanley International PLC).
> *See* https://www.morganstanley.com/disclosures/foreign-exchange-wealth-
> management-clients.

Dkt. No. 1 ¶ 32.

For each Asserted Patent, Plaintiff pleads direct infringement:

> Defendant directly uses the infringing Accused Instrumentalities at least
> because it assembled the combined infringing elements and makes them
> collectively available in the United States, including via its Internet domain
> web pages and/or software applications, as well as via its internal systems
> and interfaces.  Further, and on information and belief, Defendant has
> directly infringed by using the infringing Accused Instrumentalities as part
> of its ongoing and regular testing and/or internal legal compliance activities.
> Such testing and/or legal compliance necessarily requires Defendant to
> make and use the Accused Instrumentalities in an infringing manner.  Still
> further, Defendant is a direct infringer by virtue of its branding and
> marketing activities, which collectively comprise the sale and offering for
> sale of the infringing Accused Instrumentalities.

Accordingly, the Complaint clearly alleges Morgan Stanley are the direct infringers, and points

to specific systems (the Morgan Stanley Wealth Management and E*Trade Cryptocurrency exchange

platforms and systems), that do so, and how they do so. At the very least, Morgan Stanley will be soon

in receipt of Plaintiff's L.R. 3-2 Infringement Contentions with respect to the Asserted Patents, and will

be on full notice of each element and how it is infringed by the Morgan Stanley Accused

Instrumentalities.

To the extent the Court finds any aspect of the Complaint is deficient, Plaintiff requests leave to amend additional facts in support of its claims. *See* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave [to amend] when justice so requires.").

## IV.    Conclusion

Morgan Stanley's Motion should be denied.  Without even a proper representative claim analysis, Morgan Stanley simply fails to meet its burden.  And Plaintiff has plead enough facts "to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 547 (2007)).  As shown herein, the Asserted Claims are drawn to patent-eligible subject matter, and Morgan Stanley has failed to prove otherwise.

Dated:  June 9, 2023

Respectfully Submitted

*/s/* Christopher A. Honea
M. Scott Fuller
   Texas Bar No. 24036607
   sfuller@ghiplaw.com
Randall Garteiser
   Texas Bar No. 24038912
   rgarteiser@ghiplaw.com
Christopher A. Honea
   Texas Bar No. 24059967
   chonea@ghiplaw.com
René A. Vazquez
   Virginia Bar No. 41988
   rvazquez@ghiplaw.com

**GARTEISER HONEA, PLLC**
119 W. Ferguson Street
Tyler, Texas 75702
Telephone: (903) 705-7420
Facsimile: (903) 405-3999

**ATTORNEYS FOR PLAINTIFF**
**INTERCURRENCY SOFTWARE LLC**