IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

|  |  |
|---|---|
| INTERCURRENCY SOFTWARE LLC,  *Plaintiff*,  v.  MORGAN STANLEY & CO. LLC, MORGAN STANLEY INTERNATIONAL PLC, and MORGAN STANLEY CAPITAL SERVICES LLC,  *Defendants*. | Case No. 2:23-cv-0130  **JURY TRIAL DEMANDED** |

**DEFENDANTS' REPLY IN SUPPORT OF ITS MOTION TO DISMISS**

# **TABLE OF CONTENTS**

I.   The Asserted Claims Are Ineligible Under § 101 .................................................................. 1

    A.   Intercurrency Fails to Rebut That Claim 1 Is Representative ................................ 1

    B.   *Alice* Step One:  The Federal Circuit Has Already Rejected Intercurrency's Arguments ................................................................................................................ 3

    C.   *Alice* Step Two:  Intercurrency Fails to Identify an Inventive Concept in the Claims Beyond the Abstract Idea Itself ............................................................. 6

    D.   Dismissal Is Appropriate in Spite of Intercurrency's Alleged "Facts" and Deficient Request For Claim Construction ............................................................. 8

II.  Alternatively, The Complaint Should Be dismissed for Failure to Allege Plausible Facts Sufficient to Support A Claim OF Infringement .................................................................. 10

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l*,
   573 U.S. 208 (2014) ................................................................................................ *passim*

*American Axle & Mfg., Inc. v. Neapco Holdings LLC*,
   967 F.3d 1285 (Fed. Cir. 2019) ............................................................................................ 7

*Apple, Inc. v. Ameranth, Inc.*,
   842 F.3d 1229 (Fed. Cir. 2016) ............................................................................................ 8

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ............................................................................................................. 9

*Content Extraction & Transmission LLC v. Wells Fargo Bank*,
   776 F.3d 1343 (Fed. Cir. 2014) ............................................................................................ 3

*Dropbox, Inc. v. Synchronoss Techs., Inc.*,
   815 F. App'x 529 (Fed. Cir. 2020) ....................................................................................... 6

*Dropbox, Inc. v. Synchronoss Techs., Inc.*,
   815 F. App'x. 529 (Fed. Cir. 2020) ...................................................................................... 8

*Epic Sys. Corp. v. Decapolis Sys., LLC*,
   2022 WL 18110968 (S.D. Fla. Dec. 1, 2022) ...................................................................... 7

*Fractus, S.A. v. TCL Corp.*,
   No 20-CV-00097, 2021 WL 2483155 (E.D. Tex. June 2, 2021) ........................................ 10

*IBM Corp. v. Zillow Group, Inc.*,
   50 F.4th 1371 (Fed. Cir. 2022) ............................................................................................. 8

*Intellectual Ventures I LLC v. Symantec Corp.*,
   838 F.3d 1307 (Fed. Cir. 2016) ............................................................................................ 4

*Island Intell. Prop. LLC v. TD Ameritrade, Inc.*,
   No. 21-cv-00273-JRG-RSP, 2022 WL 17080738 (E.D. Tex. Nov. 17, 2022) ................. 6, 7

*Mad Dogg Athletics, Inc. v. Peloton Interactive, Inc.*,
   No. 20-cv-00382 (E.D. Tex. Sept. 15, 2021) ....................................................................... 9

*Miller Mendel, Inc. v. City of Anna*,
   598 F. Supp. 3d 486 (E.D. Tex. 2022) ............................................................................. 5, 8

*PPS Data, LLC v. Jack Henry & Assocs., Inc.*,
   404 F. Supp. 3d 1021 (E.D. Tex. 2019)...............................................................................2, 3

*Sanderling Mgmt. Ltd v. Snap Inc.*,
   65 F.4th 698 (Fed. Cir. 2023) ...............................................................................................10

*SAP Am., Inc. v. InvestPic, LLC*,
   898 F.3d 1161 (Fed. Cir. 2018)...........................................................................................7, 9

*SIPCO, LLC v. Emerson Elec. Co.*,
   939 F.3d 1301 (Fed. Cir. 2019)...............................................................................................5

*Solutran, Inc. v. Elavon, Inc.*,
   931 F.3d 1161 (Fed. Cir. 2019)...............................................................................................6

*Trading Techs. Int'l, Inc. v. IBG LLC*,
   921 F.3d 1084 (Fed. Cir. 2019)...........................................................................................4, 5

*Trading Techs. Int'l, Inc. v. IBG LLC*,
   921 F.3d 1378 (Fed. Cir. 2019).......................................................................................4, 5, 6

*Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*,
   874 F.3d 1329 (Fed. Cir. 2017)...............................................................................................8

*Vervain, LLC v. Micron Tech., Inc.*,
   No. 21-cv-00487, 2022 WL 23469 (W.D. Tex. Jan. 3, 2022) ...............................................11

**Statutes**

35 U.S.C. § 101................................................................................................................1, 6, 10

Intercurrency's Opposition (Dkt. 16, "Opp.") fails to address the evidence and arguments in Morgan Stanley's motion (Dkt. 9, "Mot."), offering instead boilerplate opposition arguments relying on inapposite and outdated case law.

Intercurrency neither addresses, nor disputes its prosecution history admissions that concede: (i) the representative nature of '107 patent claim 1 (Mot. 10-14), (ii) that the claims are directed to an abstract idea (Mot. 14-15), and (iii) that the only allegedly inventive concept reflected in the claims is itself an abstract idea (Mot. 21). In fact, Intercurrency's own arguments confirm that the claims are abstract, directed to trading an asset in a preferred currency and that the claims lack an inventive concept under the second step of the Supreme Court's *Alice* framework. Intercurrency does not dispute that this is the focus of the claims, nor does it address any of the cases demonstrating that fundamental economic concepts—including currency exchange—are abstract and ineligible. Mot. 15-17 (collecting cases). Likewise, Intercurrency ignores the Federal Circuit's substantial post-*Alice* precedent at Step Two, arguing incorrectly that the claims are eligible under outdated and insufficient pre-*Alice* tests. Opp. 11-13. Intercurrency's failure to address eligibility under the proper standards dooms its opposition.

Finally, with respect to Morgan Stanley's requested alternative relief—dismissal of the Complaint for failure to plead sufficient facts—the Motion identifies specific <u>material</u> limitations that are not addressed in the Complaint. Mot. 23-25. Intercurrency fails to acknowledge, address, or rebut those deficiencies. The Complaint is deficient and must be dismissed.

## I.     THE ASSERTED CLAIMS ARE INELIGIBLE UNDER § 101

### A.     Intercurrency Fails to Rebut That Claim 1 Is Representative

Intercurrency fails to address extensive evidence demonstrating a prima facie case of representativeness, including: (1) terminal disclaimers for the '930 and '863 patents against the '107; (2) a common specification for all three patents; and (3) an analysis of the claims showing

<u>**DEFENDANTS' REPLY ISO MOTION TO DISMISS**</u> – Page 1

the common limitations across all three patents. Mot. 10-14. This alone establishes representativeness. *See PPS Data, LLC v. Jack Henry & Assocs., Inc.*, 404 F. Supp. 3d 1021, 1036 (E.D. Tex. 2019) ("The cumulative effect of these three justifications—terminal disclaimer, common specification, and particularized analysis tethered to the claim language—is that JHA has met its burden to initially show representativeness.").

Beyond this, however, the Motion set forth substantial evidence that Intercurrency conceded during prosecution and here in its Complaint that claim 1 of the '107 is representative. Mot. 11-12. Intercurrency told the patent office that "its claims in the present application recite the same claimed invention," and relied on the same eligibility arguments for all claims. Mot. 11-12. And in its Complaint, Intercurrency cites to only the '107 patent in describing the purported invention of all three patents, providing no additional allegations for any claim of the '863 or '930 patent. *Compare* Compl. ¶ 37 (discussing claim 1 of the '107), *with* ¶¶ 53, 69 (alleging infringement without reference to claim language). In that way, Intercurrency's claim that it pleaded facts "which show how the accused Morgan Stanley products plausibly meet each element of one or more claims of the Asserted Patents" (Opp. 16) is flatly inconsistent with its position that claim 1 of the '107 is not representative. Claim 1 of the '107 patent is either representative of the '863 and '930 patents or Intercurrency failed to state a claim of infringement for them.

Further, Intercurrency fails to identify unique claim limitations in the '930 and '863 patent requiring individual treatment of those claims in this analysis.[1] Opp. 2. First, Intercurrency merely purports to identify "distinct claim limitations that further define *variations of the inventiveness* of the claimed subject matter" (*id*.) but does not show that these limitations are material to the

---

[1] Notably, Intercurrency does not dispute that the sole identified claim from each patent is representative of all other claims within that patent.

**DEFENDANTS' REPLY ISO MOTION TO DISMISS** – Page 2

eligibility analysis. *See PPS Data*, 404 F. Supp. at 1036 (overcoming a prima facie case of representativeness requires "identifying … limitations **and explaining their materiality to the eligibility inquiry**" (emphasis added)). Indeed, throughout its opposition, Intercurrency refers collectively and singularly to the purported invention of the Asserted Claims without differentiating between them. *See, e.g.*, Opp. 9 ("[t]he focus of the claimed advance over the prior art in this case …"), 10 ("[t]he Asserted Claims utilize …"; "the Asserted Claims cover …"), 11 ("the Asserted Claims … are directed to …"). Second, with respect to the '863 and '930 patents, Intercurrency points to limitations that appear also in the representative claim, albeit with slightly different phrasing. *Compare*, e.g., '863 claim 1 ("coupling a trading server to … currency exchange servers and … market exchange servers"), *with* '107 claim 1 ("providing a trading server coupled to … currency exchange servers and … market exchange servers"); and '930 claim 12 ("display of a market value of the asset in second currency in reference to a setting of the second currency by the trader") *with* '107 claim 1 ("receiving in the trading server an indicator of a preferred currency from a trader"). Thus, it is indisputable that all the claims of the Asserted Patents are "substantially similar and linked to the same abstract idea." *Content Extraction & Transmission LLC v. Wells Fargo Bank*, 776 F.3d 1343, 1348 (Fed. Cir. 2014).

      **B.**    *Alice* **Step One: The Federal Circuit Has Already Rejected Intercurrency's Arguments**

Intercurrency concedes throughout its opposition that the alleged improvement over the prior art is "conducting security transactions in a preferred currency regardless of what original or market currency the securities are being traded in and where the transaction may take place." Opp. 7; *see also* (Opp. 10 ("[T]he Asserted Claims cover a computerized method and system used for trading securities priced in a currency other than the currency used by a trader.")). And Intercurrency concedes that "fundamental economic and conventional business practices are

<u>**DEFENDANTS' REPLY ISO MOTION TO DISMISS**</u> – Page 3

abstract ideas." Opp. 9 (quoting *DDR Holdings, LLC v. Hotels.com L.P.*, 773 F.3d 1245, 1256 (Fed. Cir. 2014)). These concessions alone should end the *Alice* Step One inquiry—the claims here are directed to an abstract idea.

Intercurrency's contrary arguments are inconsistent with the law. Intercurrency argues that the claims here are non-abstract because they have "physical, tangible, and specialized components" (Opp. 10), but this argument has been repeatedly rejected. *See, e.g.*, *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208, 224 (2014) ("The fact that a computer 'necessarily exist[s] in the physical, rather than purely conceptual, realm'… is beside the point."); *Intell. Ventures I LLC v. Symantec Corp.*, 838 F.3d 1307, 1325 (Fed. Cir. 2016) ("Although the petitioners argued that their claims were patent eligible because they were tied to a computer and a computer is a tangible object, the Supreme Court unanimously and emphatically rejected this argument.").

Intercurrency argues that the "problem facing the industry in 2007 [is] associated with the difficulty of a trader having some knowledge of the updated costs and fees associated with a trade, which involves different currencies, before the trade" (Opp. 9) and that the purported solution "ultimately relies on the speed of processing that can only be afforded by sophisticated computing systems, over human methods." Opp. 10. But this is precisely the eligibility argument that the Federal Circuit rejected in the two precedential *Trading Techs.* cases. *See Trading Techs. Int'l, Inc. v. IBG LLC*, 921 F.3d 1084, 1089-91 (Fed. Cir. 2019) (*Trading Techs. I*); *Trading Techs. Int'l, Inc. v. IBG LLC*, 921 F.3d 1378, 1383 (Fed. Cir. 2019) (*Trading Techs. II*). As the Federal Circuit later summarized, "[t]he patent owner argued that the patent addressed technical problems relating to efficiency, speed, usability, intuitiveness, and visualization of prior art graphical user interface tools[, and the Federal Circuit nonetheless] agreed that the claims related to the practice of a financial product—helping a trader gain a market advantage—rather than a technological

invention." *SIPCO, LLC v. Emerson Elec. Co.*, 939 F.3d 1301, 1311-12 (Fed. Cir. 2019).[2] Reliance on the "speed of processing that can only be afforded by sophisticated computing systems" (Opp. 10) does not salvage patentability. *See Miller Mendel, Inc. v. City of Anna*, 598 F. Supp. 3d 486, 495 (E.D. Tex. 2022) (claims abstract because, while "[a] pen and paper version of the claimed method would not be particularly efficient, it could be completed").

Contrary to Intercurrency's conclusory dismissal of the precedential *Trading Techs.* cases (Opp. 10), those decisions are entirely on point and mandate finding the claims here ineligible. The claims in *Trading Techs.*, like those at issue here, required a physical computing device, a display of asset prices, and display of "a profit or loss incurred by the user if the long or short position is closed at the particular price" along with a display of "a profit or loss incurred by the user if the position is closed at the update to the particular price." *Trading Techs. II*, 921 F.3d at 1382. And the alleged problem suggested here by Intercurrency—knowledge of profit/loss at the time of transaction (Opp. 9)—was the same. *Id.* at 1383. The Federal Circuit unambiguously held that "merely providing a trader with new or different information in an existing trading screen is not a technical solution to a technical problem." *Id.* This is because, "the purported advance 'is a process of gathering and analyzing information of a specified content, then displaying the results, and not any particular assertedly inventive technology for performing those functions" and the claims are therefore directed to an abstract idea. *Id.* at 1385 (quoting *Electric Power Grp. LLC v. Alstom S.A.*, 830 F.3d 1350, 1354 (Fed. Cir. 2016)); *see also Island Intell. Prop. LLC v. TD Ameritrade, Inc.*, No. 21-cv-00273, 2022 WL 17080738, at *2 (E.D. Tex. Nov. 17, 2022) (claims

---

[2] Intercurrency's reliance here on *SIPCO* (Opp. at 10) is perplexing, as the claims in that decision addressed "how to extend the reach of an existing communication system from a central location to a remote, unconnected device while protecting against unwanted interference with the transmitted signals." *SIPCO*, 939 F.3d at 1312. Here, there is no such analogous limitation.

directed to "fundamental economic activity" abstract because Plaintiff "has not identified a specific means that improves computer functionality or solves a problem specifically arising from computers"). Intercurrency's identical arguments fail for the same reason.[3]

### C. *Alice* Step Two: Intercurrency Fails to Identify an Inventive Concept in the Claims Beyond the Abstract Idea Itself

At *Alice* Step Two, Intercurrency relies on pre-*Alice* cases that fail to address the Supreme Court's two-step eligibility framework or the Federal Circuit's repeated application of that framework. Opp. 11-13. But reliance here on the "machine-or-transformation" test is inapposite because "satisfying the machine-or-transformation test, by itself, is not sufficient to render a claim patent-eligible." *Solutran, Inc. v. Elavon, Inc.*, 931 F.3d 1161, 1169 (Fed. Cir. 2019).

Applying the proper two-step framework from *Alice*, it is clear that, once the abstract is removed from the claim, there is no "inventive concept"—i.e., there is no "element or combination of elements that is 'sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself.'" *Alice*, 573 U.S. at 217-18 (alteration in original). As set forth in Morgan Stanley's motion—unrebutted by Intercurrency—Intercurrency conceded during prosecution that "the additional features, when viewed individually, are merely 'generic computer and networking components performing generic computer and networking functions.'" Mot. 21 [quoting Ex. H at 17-18]. In fact, the allegedly inventive concept identified by Intercurrency during prosecution was the requirement that "the prevailing exchange rate is derived or calculated from all exchange rates … at a specific location, [and] the timing of the

---

[3] The Court also is not bound by the ipse dixit assertions by Intercurrency that the claimed solutions here are technical in nature, even when pleaded in the Complaint. *See Dropbox, Inc. v. Synchronoss Techs., Inc.,* 815 F. App'x 529, 538 (Fed. Cir. 2020) ("These pleadings provide no more than a series of legal conclusion about the § 101 analysis. When considering a motion to dismiss, courts 'must take all the factual allegations in the complaint as true'—but 'are not bound to accept as true a legal conclusion couched as a factual allegation.'").

operation." *Id.* Regardless of whether the abstract idea of deriving a prevailing exchange rate from all exchange rates was a *new* idea, it remains an *abstract* idea and is therefore ineligible for patenting. *See SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1163 (Fed. Cir. 2018) (finding claims ineligible when "[t]heir subject is nothing but a series of mathematical calculations based on selected information and the presentation of the results of those calculations"); *Island*, 2022 WL 17080738, at *2 (claims directed to "fundamental economic and accounting activities" did "not contain an inventive concept outside the realm of abstract ideas and no amount of 'overwhelming evidence of unconventionality and inventiveness'… can change that").

Intercurrency argues that the claims are eligible because "[t]he Asserted Claims are also tied to a memory device and a transmitter" and "[t]he use of a specialized server and a transmitter are essential to the operation of the claimed systems" (Opp. 12), but, beyond the fact that servers, memory devices, and transmitters are generic devices, nowhere do any of the claims recite a memory device or transmitter. *See* '107, claim 1; '863, claim 1; '930 claim 12. Unclaimed limitations cannot save the claims from abstraction. *See Am. Axle & Mfg., Inc. v. Neapco Holdings LLC*, 967 F.3d 1285, 1293 (Fed. Cir. 2019) ("[W]e have repeatedly held that features that are not claimed are irrelevant as to step 1 or step 2 of the *Mayo/Alice* analysis.").

The Court also should reject Intercurrency's bald statement that the trading server here is a "specialized computer" that is somehow inventive (Opp. 13). *See Epic Sys. Corp. v. Decapolis Sys., LLC*, 2022 WL 18110968, at *6 (S.D. Fla. Dec. 1, 2022) ("[S]aying that its patents claim 'a specialized processing device' does not make it so."). Intercurrency admits the server is special only in that it "includes the transmission of 'costs and fees … dynamically changed in accordance with the prevailing exchange rate updated constantly." Opp. 13. But "'[t]ransmitting' data, and 'retrieving' data are generalized steps to be performed on a computer using conventional computer

activity." *Dropbox, Inc. v. Synchronoss Techs., Inc.*, 815 F. App'x 529, 537 (Fed. Cir. 2020).

Intercurrency also does not dispute that the claims lack any detail on how to program a server to perform the claimed tasks, including calculating a prevailing exchange rate or dynamic display of data. Mot. 19-20. Without such detail, there cannot be an inventive concept. *Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*, 874 F.3d 1329, 1338 (Fed. Cir. 2017) ("To save a patent at step two, an inventive concept must be evidence in the claims."). The Federal Circuit previously confirmed that "[t]he difficulty of the programming details for [claimed] functionality is immaterial because those details are not recited in the actual claims." *Apple, Inc. v. Ameranth, Inc.*, 842 F.3d 1229, 1242 (Fed. Cir. 2016) (affirming ineligibility of claims "adding conventional computer components to well-known business practices").

Finally, Intercurrency does not address Federal Circuit precedent confirming that the display of "all costs and fees are dynamically changed in accordance with the prevailing exchange rate" (e.g., '107, 8:65-67) do not provide an inventive concept. Mot. 22-23. For example, in *IBM Corp. v. Zillow Group, Inc.*, the Federal Circuit held that "dynamically altering visual characteristics" of a computer display is not inventive, because "that dynamic relayering or rematching could also be performed by hand, though more slowly." 50 F.4th 1371, 1382 (Fed. Cir. 2022). "Any of the patent's improved efficiency comes not from an improvement in the computer but from applying the claimed abstract idea to a computer display." *Id*; *see also Miller Mendel*, 598 F. Supp. 3d at 498 ("'the alleged efficiency of the method through computerization' [] is not enough to confer patent eligibility").

### D. Dismissal Is Appropriate in Spite of Intercurrency's Alleged "Facts" and Deficient Request For Claim Construction

Contrary to Intercurrency's arguments (Opp. 4-6), the Motion does not ignore the Complaint's recitation of alleged facts, but rather demonstrates why the claims are abstract and

non-inventive in spite of them. *See, e.g.*, Mot. 11. Indeed, taking these purported facts as true, Intercurrency's Complaint confirms that all the Asserted Claims are directed to the same abstract idea and that abstract idea is financial (and not technical) in nature. *See, e.g.*, Compl. ¶¶ 16-18.

Further, allegations about whether the prior art displayed assets in a preferred currency in conjunction with a prevailing exchange rate are irrelevant. Taking Intercurrency's allegations as true, the claims remain unpatentably abstract. *See SAP*, 898 F.3d at 1168 ("[T]he 'investment' character of this information simply invokes a separate category of abstract ideas involved in *Alice* and many of our cases—'the creation and manipulation of legal obligations such as contracts involved in fundamental economic practices.'"). As the Federal Circuit explained, "[n]o matter how much of an advance in the finance field the claims recite, the advance lies entirely in the realm of abstract ideas, with no plausibly alleged innovation in the non-abstract application realm [and] is ineligible for patenting." *Id.* at 1163.

Intercurrency's conclusory allegations that the claims are non-abstract and include an inventive concept also are entitled to no weight. Courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Mad Dogg Athletics, Inc. v. Peloton Interactive, Inc.*, No. 20-cv-00382 (E.D. Tex. Sept. 15, 2021)) (court "is not required to accept the plaintiff's legal conclusions as true").

Finally, claim construction is unnecessary to resolve this issue because although Intercurrency argues that construction of "trading server," "dynamically changed," "updated constantly," "calculate[d] prevailing exchange rate" is necessary for this motion, it does not "articulate how adoption of the construction [for any proposed claim term] would materially impact the analysis at step one (and/or at step two)." *Sanderling Mgmt. Ltd v. Snap Inc.*, 65 F.4th

698, 704 (Fed. Cir. 2023) ("If claims are directed to ineligible (or eligible) subject matter under all plausible constructions, then the court need not engage in claim construction before resolving a Section 101 motion.").

## II. ALTERNATIVELY, THE COMPLAINT SHOULD BE DISMISSED FOR FAILURE TO ALLEGE PLAUSIBLE FACTS SUFFICIENT TO SUPPORT A CLAIM OF INFRINGEMENT

Intercurrency falsely claims that, in its Complaint, "[a]s to each of the Asserted Patents, Plaintiff alleges facts publicly available at the outset of the case which show how the accused Morgan Stanley products plausibly meet each element of one or more claims of the Asserted Patents." Opp. 16.[4] Nowhere does the Complaint include any allegations that Morgan Stanley's products "determin[e] in the trading server a prevailing exchange rate …" or "display[] all costs and fees in the preferred currency …" *Compare* Compl. ¶ 37, *with* '107, claim 1. Nor does the Complaint offer any allegations tying the accused products to any limitations of the identified '863 or '930 claims. *See* Compl. ¶¶ 53, 69. Given Intercurrency's arguments on eligibility and its admissions during prosecution, its failure to plead facts relative to these limitations is fatal to its Complaint. *See Vervain, LLC v. Micron Tech., Inc.*, No. 21-cv-00487, 2022 WL 23469, at *5 (W.D. Tex. Jan. 3, 2022) (holding "that the [c]omplaint has not sufficiently pleaded infringement of the [asserted] patents' claims, having failed to plausibly allege infringement of the" limitations that "are material to practicing the asserted claim, at least because the relevant prosecution history and the [c]omplaint suggest that these limitations capture the point of novelty").

---

[4] Intercurrency's suggestion that its pleadings failures may be cured by serving infringement contentions is wrong. Opp. at 18. "Pleading sufficiency and infringement contentions serve separate functions in different stages of a case. They are not coextensive." *Fractus, S.A. v. TCL Corp.*, No 20-CV-00097, 2021 WL 2483155, at *3 (E.D. Tex. June 2, 2021) (noting that "the Court is perplexed by [Plaintiff's] suggestion that service of infringement contentions would cure a failure of notice").

|  |  |
|---|---|
|  | Respectfully submitted, |
| Dated:  June 20, 2023 | /s/ Kevin J. Post |
|  | Melissa R. Smith<br>**GILLAM & SMITH, LLP**<br>TX State Bar No. 24001351<br>303 S. Washington Avenue<br>Marshall, Texas 75670<br>Telephone: (903) 934-8450<br>Facsimile: (903) 934-9257<br>melissa@gillamsmithlaw.com |
|  | Kevin J. Post<br>(NY Bar No. 4382214)<br>(Eastern District of Texas Member)<br>Josef Bryks Schenker<br>(NY Bar No.  4935185)<br>(Eastern District of Texas Member)<br>**ROPES & GRAY LLP**<br>1211 Avenue of the AmericasNew York, NY 10036 Telephone: (212) 596-9000<br>Facsimile: (212) 596-9090<br>kevin.post@ropesgray.com<br>josef.schenker@ropesgray.com |
|  | James F. Mack<br>(CA Bar No. 322056)<br>(Eastern District of Texas Member)<br>**ROPES & GRAY LLP**<br>1900 University Avenue, 6th Floor<br>East Palo Alto, CA 94303-2284<br>Telephone: (650) 617-4000<br>Facsimile: (650) 617-4090<br>james.mack@ropesgray.com |
|  | *Attorneys for Defendants*<br>MORGAN STANLEY & CO. LLC, MORGAN STANLEY INTERNATIONAL PLC, and MORGAN STANLEY CAPITAL SERVICES LLC |

**DEFENDANTS' REPLY ISO MOTION TO DISMISS – Page 11**

## CERTIFICATE OF SERVICE

The undersigned certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3) on this 20th day of June 2023.

*/s/ Kevin J. Post*